United States District Court
Southern District of Texas
**ENTERED**
September 21, 2023
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

TYRAN S.,[1]

§
§
§

*Plaintiff,*

§
§

v.

§
§

No. 4:22-cv-1736

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,

§
§
§
§
§

*Defendant.*

§
§

### MEMORANDUM AND ORDER

Plaintiff Tyran S. ("Plaintiff") filed suit seeking judicial review of an administrative decision. ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").[2] The Parties filed cross-motions for summary judgment. Pl.'s MSJ, ECF No. 13; Def.'s MSJ, ECF No. 14. Plaintiff seeks an order rendering benefits or remanding for further consideration and argues that the ALJ used an incorrect standard at Step Two,

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On August 18, 2022, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order Transferring, ECF No. 9.

improperly evaluated Plaintiff's age, and erroneously relied upon the VE's testimony that conflicted with the Dictionary of Occupational Titles ("DOT"). ECF No. 13. Commissioner counters that because the ALJ moved past Step Two, any error in applying the wrong standard is meaningless, the ALJ appropriately determined Plaintiff's age, and by not raising the DOT conflicts at the hearing, Plaintiff waived any appellate argument about conflicting testimony. ECF No. 14. Based on the briefing, the record, and the applicable law, the Court determines that the ALJ's determination is supported by substantial evidence; therefore, Plaintiff's motion for summary judgment should be denied and Commissioner's motion for summary judgment should be granted.

## I.    BACKGROUND

Plaintiff is 56 years old, R. 49, 83, 220,[3] and completed high school. R. 50. Plaintiff worked as a correctional officer, a sales representative, and an inventory control clerk. R. 50–51, 80–81, 222–53. Plaintiff alleges a disability onset date of September 15, 2020. R. 12, 48, 52. Plaintiff claims he suffers physical impairments. R. 70, 84.

On October 9, 2020, Plaintiff filed his application for disability insurance benefits under Title II of the Act. R. 12, 220–21. Plaintiff based[4] his application on

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 6.

[4] The relevant time period is September 15, 2020—Plaintiff's alleged onset date—through December 31, 2024—Plaintiff's last insured date. R. 14. The Court will consider medical evidence

type 2 diabetes, hyperlipidemia, hypertension, chronic pancreatitis, hyperglycemia, edema, chronic diarrhea, dizziness, abdominal bloating, and atrial fibrillation. R. 70, 84. The Commissioner denied his claim initially, R. 100–04, and on reconsideration, R. 109–12.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at the hearing. R. 48. Plaintiff and a vocational expert ("VE") testified at the hearing. R. 49, 51. The ALJ issued a decision denying Plaintiff's request for benefits.[5] R. 9–27. The Appeals Council denied Plaintiff's request for review, upholding the ALJ's decision to deny benefits. R. 1–6.

Plaintiff appealed the Commissioner's ruling to this court. Compl., ECF No. 1.

## II.   STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act ("the Act") provides for district court review of any

---

outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step four. R. 20–21. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured. R. 14 (citing 20 C.F.R. § 404.1571 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: chronic pancreatitis, atrial fibrillation, and gastroesophageal disease (GERD). R. 14–15 (citing 20 C.F.R. § 404.1520(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 15 (referencing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). The ALJ found that Plaintiff has the RFC to perform the full range of light work as defined in 20 CFR § 404.1567(b). R. 15–20. At step four, the ALJ determined that through the date last insured, Plaintiff was able to perform past relevant work as a sales representative and inventory control clerk. R. 20–21. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 21.

final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of Commissioner, even if the evidence preponderates against Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for Commissioner's decision and involves more than a search for evidence supporting Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.  THE SHIFTING BURDEN OF PROOF.

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or

can be expected to last for a continuous period of not less than twelve months."

42 U.S.C. § 423(d) (1)(A) (2000). The impairment must be proven through

medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C.

§ 423(d)(3) (2000). The impairment must be so severe that the claimant is "incapable

of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843,

2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954

F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset

of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v.*

*Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

Commissioner applies a five-step sequential process to determine disability

status. *Id.* The claimant bears the burden of proof at the first four steps to establish

that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D.

Tex. Nov. 30, 2012). The burden shifts to Commissioner at step five to show that

the claimant can perform other work. *Id.* The burden then shifts back to the claimant

to rebut this finding. *Id.* If at any step in the process Commissioner determines that

the claimant is or is not disabled, the evaluation ends. *Id.*

## IV.   COMMISSIONER IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff raises three issues. First, Plaintiff argues that the ALJ's written

decision failed to apply the correct legal standard for determining the severity of

Plaintiff's impairments and improperly evaluated the State Agency Medical

Consultants' ("SAMC") opinions and Plaintiff's symptoms related to his conditions. ECF No. 13 at 5. Second, Plaintiff argues that the ALJ improperly evaluated Plaintiff's age. *Id.* at 8. Third, Plaintiff argues that the ALJ relied upon VE testimony inconsistent with the DOT. *Id.* at 12.

The Court finds that insofar as the ALJ misapplied the severity standard at Step Two, he appropriately assessed the record evidence concerning Plaintiff's conditions and age in his written decision. Finally, Plaintiff waived any argument regarding inconsistencies between the VE's testimony and the DOT because Plaintiff's counsel did not question the VE or otherwise raise the conflict at the hearing before the ALJ.

### A.      *The ALJ Did Not Err in Addressing Plaintiff's Conditions.*

Plaintiff raises several arguments under his first issue. First, Plaintiff contends that the ALJ failed to use the correct standard in determining Plaintiff's non-severe impairments. ECF No. 13 at 5. Plaintiff also argues that the ALJ failed to evaluate appropriate evidence in determining that Plaintiff's hypertension and bowel problems were non-severe impairments. *Id.* at 5–8. The Commissioner responds that because the ALJ did not find Plaintiff disabled at Step Two, his argument concerning the wrong standard lacks merit, ECF No. 15 at 4, and even so, the ALJ properly referenced and utilized the correct standard. *Id.* at 4–5. The Commissioner argues that "substantial evidence supports the ALJ's findings that Plaintiff's hypertension

and diarrhea were not severe impairments." *Id.* at 7. The Court considers each argument in turn.

### 1. The ALJ failed to appropriately apply the relevant standard at Step Two.

"In *Stone v. Heckler*, the Fifth Circuit held that an 'impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it *would not be expected to interfere with the individual's ability to work*, irrespective of age, education or work experience.'" *Ardoin v. Saul*, No. 4:19-CV-02022, 2020 WL 2934814, at *3 (S.D. Tex. June 3, 2020) (emphasis added) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "The *Stone* court also held an ALJ is presumed to have applied an incorrect standard 'unless the correct standard is set forth by reference to [the *Stone*] opinion or another of the same effect[.]'" *Id*. (quoting *Stone*, 752 F.2d at 1106).

In this case, the ALJ stated:

> At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). . . An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522, Social Security Rulings (SSRs) 85-28 and 16-3p).

R. 13 (emphasis added).

The ALJ's citation and recitation of SSR 85-28 comports with the correct standard. *See Wilkes v. Kijakazi*, No. 4:22-CV-01591, 2023 WL 3855317, at *3 (S.D. Tex. June 5, 2023) ("The ALJ must provide some indication that they applied *Stone* or an equivalent authority in their written decisions. Social Security Ruling ("SSR") 85-28, which includes language similar but not wholly identical to *Stone*, 'comports with' the *Stone* standard.") (citing *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021)).

However, the ALJ failed to then utilize the standard appropriately. *See id.* At Step Two, the ALJ found Plaintiff's hypertension,[6] diabetes mellitus,[7] and aphasia[8] to be non-severe impairments. R. 15. The ALJ stated:

> treatment records showed [Plaintiff's] blood pressure was well controlled with medication. Moreover, diabetes mellitus appeaed controlled. The claimant was not on insulin, and laboratory results

---

[6] "Hypertension (high blood pressure) is when the pressure in your blood vessel is too high." *See* https://www.who.int/news-room/fact-sheets/detail/hypertension#:~:text=Hypertension%20(high%20blood%20pressure)%20is,get%20your%20blood%20pressure%20checked (last visited September 14, 2023).

[7] "Diabetes mellitus refers to a group of diseases that affect how the body uses blood sugar (glucose). Glucose is an important source of energy for the cells that make up the muscles and tissues. It's also the brain's main source of fuel. The main cause of diabetes varies by type. But no matter what type of diabetes you have, it can lead to excess sugar in the blood. Too much sugar in the blood can lead to serious health problems." *See* https://www.mayoclinic.org/diseases-conditions/diabetes/symptoms-causes/syc-20371444 (last visited September 19, 2023).

[8] "Aphasia is a disorder that affects how you communicate. It can impact your speech, as well as the way you write and understand both spoken and written language. Aphasia usually happens suddenly after a stroke or a head injury. But it can also come on gradually from a slow-growing brain tumor or a disease that causes progressive, permanent damage (degenerative). The severity of aphasia depends on a number of things, including the cause and the extent of the brain damage." *See* https://www.mayoclinic.org/diseases-conditions/aphasia/symptoms-causes/syc-20369518 (last visited September 19, 2023).

> reflected normal A1C levels.[9] Lastly, aphasia lasted only two days in July 2021. Follow-up records showed this condition resolved. I considered all of [Plaintiff's] medically determinable impairments, including those that were not severe, when assessing the claimant's residual functional capacity.

R. 15. As evidenced above, the ALJ considered each of these impairments and found them to be non-severe because Plaintiff's medical records demonstrated that each of these impairments were resolved either through compliance with medication or requisite treatment.[10] The ALJ also considered Plaintiff's other complained-of conditions: headaches and bowel problems, and found them to be neither severe nor non-severe because Plaintiff did not take prescription medication to treat these conditions and there was "no history or diagnosis or treatment in the record." R. 15.

Although the ALJ found these conditions to either be a non-severe impairment or no impairment at all, he later found when determining Plaintiff's RFC that some of these conditions, namely Plaintiff's "cardiac symptoms and gastrointestinal

---

[9] "The A1C test—also known as the hemoglobin A1C or HbA1c test—is a simple blood test that measures your average blood sugar levels over the past 3 months." *See* https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html # :~: text =The%20A1C 20test%E2%80%94also%20known,care%20team%20manage%20your%20diabetes. (last visited September 19, 2023).

[10] R. 471 (11/11/2020 Dr. Gregory's Roach's Treatment Notes, which read "Blood pressure is well controlled on present treatment); R. 963, 975, 985, 987, 991, 994, 997, 1001, 1006, 1010 (Lab Results indicating Plaintiff's glucose levels and A1c levels under diabetes range); R. 981 (7/20/2021 Dr. Esteban Berberian's Treatment Notes noting Plaintiff presented for slurred speech, but "symptoms have nearly resolved today"); 990 (7/14/2021 NP Telma Rodriguez's Treatment Notes that aphasia "symptoms are resolving today" and was likely caused by "alcohol withdrawal and hypoglycemic episodes"); 1055 (8/24/2021 Dr. Yassir Ashraf's Treatment Notes that "[aphasia] has been resolved").

symptoms" needed to be accounted for in limiting Plaintiff's RFC to light work—indicating that the ALJ found these conditions to have an effect on Plaintiff's ability to work. R. 19. In finding that Plaintiff's hypertension and bowel problems had an effect on Plaintiff's ability to work that needed to be accounted for in Plaintiff's RFC, the ALJ failed to follow *Stone*'s guidance that an "impairment can be considered as not severe only if . . . it would not be expected to interfere with the individual's ability to work. . . .'" *Stone*, 752 F.2d at 1101.

**2.      The ALJ's analysis at Step Two is harmless.**

Even so, "[a] step two error is harmless if the ALJ proceeds beyond step two and gives proper consideration to both the severe and non-severe impairments in the remaining steps." *Ardoin*, 2020 WL 2934814, at *3 (citing *Goodman v. Comm'r of Soc. Sec. Admin.*, Civil Action No. 3:11-CV-1321-G(BH), 2012 WL 4473136, at *10 (N.D. Tex. Sep. 10, 2012); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). Here, the ALJ's decision demonstrates that in formulating Plaintiff's RFC, he properly considered the limiting effects of Plaintiff's severe and non-severe impairments and Plaintiff's conditions—those he found to not affect Plaintiff's ability to work:

diabetes,[11] aphasia,[12] and headaches,[13] and those he found to have an effect on Plaintiff's ability to work: hypertension and bowel problems.[14]

Plaintiff complains that the ALJ failed to properly consider his hypertension and bowel problems. Because any complaint that Plaintiff has with the ALJ's decision at Step Two is harmless if the ALJ "proceeds beyond step two and gives proper consideration to both the severe and non-severe impairments in the remaining steps," the Court considers Plaintiff's arguments related to the ALJ's treatment of his hypertension and bowel problems in the context of the ALJ's RFC assessment,

---

[11] R. 16 ("The claimant indicated he had diabetes mellitus, which caused lower extremity swelling and dizziness. The claimant said he no longer took prescription medication to treat diabetes mellitus."); R. 17 ("Follow-up treatment records from November 2020 revealed the claimant reported balance issues and dizziness. The claimant reported he stopped drinking. Physical examination results appeared within normal limits."); R. 18 ("Treatment records from early 2021 revealed the claimant was doing well. . . . Follow-up treatment records from March 2021 showed the claimant continued to deny . . . dizziness, . . . but he reportedly experienced palpitations and fatigue. Physical examination results remained unremarkable."); R. 19 ("Although recent records confirmed the claimant displayed leg edema, he reported non-compliance with diuretic medication and atrial fibrillation medication. Despite lower extremity swelling, the claimant had normal range of motion in all extremities and did not use an assistive device.").

[12] R. 18 ("The claimant was hospitalized from May 23, 2021 through May 25, 2021. The claimant presented to the hospital with tremors, slurred speech, and dizziness. Initially, the claimant was evaluated for stroke, but there were no significant findings to suggest acute stroke. Instead, the claimant's presentation appeared concerning for acute alcohol withdrawal. The claimant reported a history of heavy drinking, and he mentioned he stopped drinking for two days before admission. He was tachycardiac at time of admission. Hospital records indicated the claimant was not taking all medication as prescribed. The claimant was given medication to treat alcohol withdrawal and showed significant improvement. Examination results revealed regular heart rate and rhythm with no murmurs, no neurological deficits, and no extremity edema.").

[13] R. 16 ("The claimant testified he experienced daily headaches. He said he experienced these headaches about two months. The claimant reported he only used over-the-counter medication to treat headaches.").

[14] R. 16–17, 18 19. The Court addresses these particular conditions in depth below.

where the ALJ properly considered the limiting effects of Plaintiff's conditions. *See Ardoin*, 2020 WL 2934814, at *3.

Plaintiff argues that in addressing his hypertension, the ALJ ignored the SAMCs' opinions that his hypertension was a severe impairment and relied upon insufficient medical records. ECF No. 13 at 5–6. Plaintiff further argues that the ALJ incorrectly found his bowel problems to not be a medically determinable impairment because the ALJ improperly evaluated his symptoms. *Id.* at 7–8. The Commissioner responds that the ALJ appropriately determined the SAMCs' opinions were "unsupported and inconsistent with the record as a whole," and "properly considered Plaintiff's testimony that he had bowel problems." ECF No. 15 at 5–6, 7.

a.    *Plaintiff's Hypertension.*

At Step Two, the ALJ found Plaintiff's hypertension to be a non-severe impairment, noting that records indicated that this condition "was well controlled with medication." R. 15. In evaluating hypertension's effect on Plaintiff's RFC, the ALJ considered Plaintiff's medical records, testimony, and medical opinions in the record. R. 16–20. Pertinent to Plaintiff's argument, the ALJ discounted the SAMCs' opinions because they "appeared unsupported and inconsistent with the record as a whole." R. 20. The SAMCs opined that Plaintiff's hypertension was a severe impairment, assessed his RFC at a medium exertional level, and ultimately found

Plaintiff was not disabled.[15] The ALJ explained that he did not find these opinions persuasive because "[t]he total medical evidence indicated [Plaintiff] was more limited based on the medical history and subjective reports." R. 19–20.  Ultimately, the ALJ found Plaintiff capable of performing light work as defined in 20 C.F.R. § 404.1567(b), rather than accepting the SAMCs' recommendation that Plaintiff's RFC be assessed at a higher level of exertion. R. 15.

"Under the new rule regarding RFC determinations, the ALJ is no longer required to defer or give any specific evidentiary weight to any medical opinion or prior administrative finding." *Teresa B. v. Kijakazi*, No. 4:20-CV-2562, 2022 WL 902640, at *4 (S.D. Tex. Mar. 28, 2022) (citing 20 C.F.R. § 404.1520c(a)).[16] Instead, the ALJ must consider all medical opinions and prior administrative medical findings using these factors: (1) supportability; (2) consistency; (3) the physician's relationships with the claimant, which includes the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining

---

[15] R. 77, 81, 82 (12/12/2020 Dr. Craig Billinghurst's report that Plaintiff's hypertension was a severe impairment and Plaintiff was capable of medium work and not disabled); R. 91, 97, 98 (3/18/2021 Dr. R. Waranch and Dr. Mila Bacalla's report that Plaintiff's hypertension was a severe impairment and Plaintiff was capable of medium work and not disabled).

[16] For claims filed after March 27, 2017, the new guidelines have eliminated the former requirement that the ALJ give deference to the opinions of treating physicians. *Garcia v. Saul*, No. SA-19-CV-01307-ESC, 2020 WL 7417380, at *4 (W.D. Tex. Dec. 18, 2020) (explaining that despite new regulations, previous decisions are still relevant as supportability and consistency have always been the most important considerations). Because Plaintiff's claim was filed on October 9, 2020, this new rule applies.

relationship; (4) the physician's specialization; and (5) other factors."[17] *Id.* (citing 20 C.F.R. § 404.1520c(b)). The most important factors are consistency and supportability. *Id.*

Here, the ALJ summarized the SAMCs' opinions, explained their limited relationship with Plaintiff, and found that based on Plaintiff's subjective reports and medical history, their opinions were unsupported and inconsistent. R. 19–20. The ALJ used the requisite factors in determining the persuasiveness of the SAMCs' opinions. *See Teresa B.*, 2022 WL 902640, at *4. Moreover, Plaintiff has not shown harm from this alleged error. The ALJ assessed a lower RFC than what the SAMCs proffered. Had the ALJ accepted these opinions as persuasive, Plaintiff would have a higher RFC assessed as able to perform medium work. Plaintiff has not shown that, with this higher RFC, the outcome would have changed to a finding of disabled.

Next, Plaintiff's argument that the ALJ relied on deficient medical records in his decision related to Plaintiff's hypertension is without merit. The record the ALJ cited states: "[Plaintiff] presents with hypertensive heart disease without failure. Blood pressure is well controlled on present treatment" and is dated two months after Plaintiff's alleged onset date of September 15, 2020.[18] This record addresses the

---

[17] Other factors include evidence showing the medical source is familiar with the other evidence in the claim, or that the medical source understands the disability program's policies and evidentiary policies. 20 C.F.R. § 404.1520c(b).

[18] R. 471 (11/11/2020 Dr. Gregory's Roach's Treatment Notes).

relevant time period and condition, and therefore, the ALJ was permitted to utilize it. Plaintiff has failed to show that the ALJ's reliance on this record as support for his determination that Plaintiff's hypertension was a non-severe impairment was deficient.

   b.   *Plaintiff's Bowel Problems.*

Furthermore, the ALJ properly considered Plaintiff's subjective complaints related to his bowel problems. At Step Two, the ALJ found Plaintiff's bowel problems were not a medically determinable impairment because although "[Plaintiff] testified he had . . . bowel problems," he did not take prescription medication to treat this condition and "there was no history of diagnosis or treatment in the record." R. 15. Even so, the ALJ considered these complaints in assessing his RFC. The ALJ noted that Plaintiff testified that he "needed to wear adult diapers due to . . . fecal incontinence." R. 16. The ALJ also considered that treatment records from early 2021 indicated that Plaintiff "had no active gastrointestinal complaints," and still had no gastrointestinal complaints according to medical records from July and August 2021. R. 18. The ALJ concluded that by limiting Plaintiff to light exertion he accounted for Plaintiff's gastrointestinal symptoms, and that any additional limitations were unnecessary "based on the conservative treatment history and largely normal physical examination results." R. 19.

"[T]he ALJ may discount a claimant's subjective complaints if inconsistencies exist between the alleged impairments and the evidence as a whole." *Woodard v. Kijakazi*, No. 4:21-CV-1219, 2022 WL 18927464, at *5 (S.D. Tex. Dec. 14, 2022) (citing *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995)). "It is well settled that an ALJ's credibility findings on a claimant's subjective complaints are entitled to deference." *Id.* (quoting *Washington v. Barnhart*, 424 F. Supp. 2d 939, 956 (S.D. Tex. 2006) (collecting cases)). "Further, "[t]he evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant." *Id.* (quoting *Jones v. Astrue*, No. CIV.A. H-07-2310, 2008 WL 2571718, at *15 (S.D. Tex. June 26, 2008)).

Here, the ALJ's assessment of Plaintiff's subjective complaints is supported by substantial evidence. The ALJ considered Plaintiff's testimony about his bowel problems, but found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his complaint were not entirely consistent with the medical evidence.[19] *See Ardoin*, 2020 WL 2934814, at *5 ("The ALJ's written decision clearly demonstrates that the ALJ considered Ardoin's subjective complaints and

---

[19] Although Plaintiff points to other doctor visits and a prescription for Creon, the ALJ is not required to discuss every piece of evidence in the record. *See Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence."). Moreover, Plaintiff failed to establish how this medication, a medication for conditions where the pancreas fails to make or release sufficient digestive enzymes needed to break down and digest food, treats Plaintiff's chronic diarrhea. *See* https://www.drugs.com/creon.html (last visited September 15, 2023).

symptoms, but found his statements regarding the intensity, persistence, and limiting effects of his symptoms to be not entirely consistent with the medical evidence.") (citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988)); *see also Woodard*, 2022 WL 18927464, at *4–5. In effect, Plaintiff asks this Court to give greater weight to Plaintiff's complaints than the ALJ, however, the Court is not permitted to reweigh the evidence. *See Ardoin*, 2020 WL 2934814, at *5 (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977); *Hollis*, 837 F.2d at 1385).

Because the ALJ proceeded beyond step two and gave proper consideration to both the severe and non-severe impairments in the remaining steps, the Court finds that any Step Two error was harmless. *See Ardoin*, 2020 WL 2934814, at *3.

## B.   *The ALJ Properly Assessed Plaintiff's Age.*

Plaintiff argues that at the hearing, he was "three months away from turning 55, which is defined as a person of advanced age," giving rise to a borderline age situation. ECF No. 13 at 8. Plaintiff argues that the ALJ did not properly conduct the requisite evaluation in this situation—the ALJ failed to consider whether Plaintiff could perform his actual past work in light of his age, and instead considered the work as generally performed and applying Plaintiff's age to the "Grids." *Id.* at 11.

In his decision, the ALJ found at Step Four that Plaintiff could perform his past relevant work as a sales representative and inventory control clerk based on Plaintiff's RFC. R. 20. In reaching this conclusion, the ALJ relied upon the VE's

testimony—the VE evaluated Plaintiff's descriptions of his actual work and then, utilizing his expert knowledge, classified Plaintiff's past work pursuant to the DOT.

R. 20. The ALJ also alternatively considered Step Five, finding that:

> In addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform, considering [his] age, education, work experience, and residual functional capacity (20 CFR 404.1569 and 404.1569a). Therefore, I make the following alternative findings for step five of the sequential evaluation process.
>
> [Plaintiff] was born on January 5, 1967 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563). Although a borderline age situation exists because [Plaintiff] is within a few days to a few months of attaining the next higher age category and use of the higher age category would result in a finding of "disabled" instead of "not disabled", use of this age category is not supported by the limited adverse impact of all factors on [Plaintiff's] ability to adjust to other work. In this case, [Plaintiff] has a long continuous work history, past relevant work that ended in the recent past, and past relevant work exists in several areas.

R. 20–21. Then utilizing the Medical Vocational Guidelines ("Grids"), the ALJ found "[b]ased on a residual functional capacity for the full range of light work, considering [Plaintiff's] age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.14."[20] R. 21.

---

[20] "The Grid Rules, which are found at 20 C.F.R. Part 404, Subpart P, Appendix 2, were designed to improve the uniformity and the efficiency of an ALJ's Step Five determination. The Grid Rules are a matrix of the four factors – physical ability, age, education, and work experience – that are used to determine whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. When a claimant's qualifications correspond to the job requirements identified in a Grid Rule, the rule directs a mandatory conclusion as to whether work exists that the claimant could perform; if such work exists, the claimant is not considered disabled."

The ALJ's decision demonstrates that he did not evaluate Plaintiff's borderline age situation at Step Four when he evaluated Plaintiff's "actual work." Insofar as Plaintiff argues that the ALJ should have considered his borderline age at Step Four, this is meritless. *See* 20 C.F.R. § 404.1560(b)(3) ("If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age . . . or whether your past relevant work exists in significant numbers in the national economy."). Furthermore, because the ALJ appropriately found that Plaintiff was not disabled at Step Four, i.e., that Plaintiff could perform his past work, then any alternative consideration of age at Step Five is inconsequential. *See Marilyn S. v. Comm'r of Soc. Sec.*, No. 2:21-CV-3598, 2022 WL 472440, at *13 (S.D. Ohio Feb. 16, 2022) ("Nevertheless, the ALJ decided this case at step four so any step five error is harmless.") (citing *Patrick v. Astrue*, No. CV-07-3099-CI, 2009 WL 36771, at *4 (E.D. Wash. Jan. 6, 2009) ("If the ALJ did indeed make an adequate step four finding that Plaintiff can perform past relevant work, the error at step five is harmless error because it was not a required step."); *Farley v. Colvin*, No. 2:11-0123, 2013 WL 5727389, at *14 (M.D. Tenn. Oct. 21, 2013), *report and recommendation adopted*, No. 2:11-CV-00123, 2013 WL

---

*Migues v. Saul*, No. 6:18-CV-01611, 2019 WL 6827225, at *6–8 (W.D. La. Nov. 20, 2019), *report and recommendation adopted*, No. 6:18-CV-01611, 2019 WL 6827232 (W.D. La. Dec. 12, 2019).

6009489 (M.D. Tenn. Nov. 13, 2013) (finding that the step five error was harmless because the step five analysis was in the alternative to an adequate step four analysis)).

Even so, the Court finds that the ALJ appropriately explained his evaluation of Plaintiff's age at step Five. "At the fifth step of the evaluation process, the ALJ considers Plaintiff's age as one of the relevant vocational factors." *Lindsey v. Saul*, No. 4:20-CV-303, 2021 WL 933748, at *8 (S.D. Tex. Jan. 20, 2021), *report and recommendation adopted*, No. CV H-20-303, 2021 WL 931694 (S.D. Tex. Mar. 10, 2021) (citing 20 C.F.R. § 404.1563(a)). "A plaintiff can be classified in one of three categories: (1) younger person (18–49); (2) a person closely approaching advanced age (50–54); or (3) a person of advanced age (55 or older)." *Id.* (citing 20 C.F.R. § 404.1563(c)-(e)). "The regulations also mention the possibility of a 'borderline' situation, which is not specifically defined either by statute or by the governing regulation, where the Commissioner will consider applying an older age category if a plaintiff is 'within a few days to a few months of reaching an older age category.'" *Id.* (quoting 20 C.F.R. § 404.1563(b)).

"[M]erely showing [Plaintiff] was within a few months of achieving 'advanced age,' does not automatically move [Plaintiff] into the 'advanced' category." *Nance v. Commissioner*, No. 1:16-cv-69-RP, 2017 WL 590300, at *3 (N.D. Miss. Feb. 14, 2017). Instead, the ALJ "has considerable discretion as to

whether it should advance a claimant to the next age group or decide [his] case based on [his] chronological age." *Id. "*The ALJ must determine if there are 'additional vocational adversities,' which involve 'the presence of an additional impairment(s) which infringes upon—without substantially narrowing—a claimant's remaining vocational base.'" *McGowan v. Comm'r of Soc. Sec.*, No. 3:19-CV-44-TSL-JCG, 2019 WL 6794208, at *3 (S.D. Miss. Nov. 22, 2019), *report and recommendation adopted*, No. 3:19CV44TSL-JCG, 2019 WL 6794198 (S.D. Miss. Dec. 12, 2019) (*Nance*, 2017 WL 590300, at *4) (quoting HALLEX § II-5-3-2)).[21]

Here, the ALJ specifically addressed Plaintiff's borderline age situation, noting Plaintiff's age, upcoming birthday, and relevant work history. R. 21. The ALJ recognized this case presented a borderline age situation and considered whether use of the older age category was more appropriate. *See Bidwell v. Comm'r, SSA*, No. 420CV00860ALMCAN, 2022 WL 4594191, at *5–8 (E.D. Tex. Aug. 31, 2022),

---

[21] "[T]here is a split of authority as to the extent an ALJ is required to discuss a borderline age situation." *McGowan*, 2019 WL 6794208, at *4 (citing *Trevino v. Berryhill*, No. 7:16-cv-684, 2018 WL 1629211, at *8-12 (S.D. Tex. Mar. 16, 2018), *report and recommendation adopted*, No. M-16-684, 2018 WL 1626365 (S.D. Tex. Apr. 4, 2018) (The Sixth, Ninth, and Eleventh Circuits do not require an ALJ to explain if he considered the issue. The Third, Eighth, and Tenth Circuit do require the ALJ to explain whether he considered the issue. The Fifth Circuit has not ruled on the issue.); *Ware v. Colvin*, No. 3-12-cv-291-RFC, 2014 WL 4999276, at *7–9 (W.D. Tex. Oct. 7, 2014) (collecting cases)). Even so, when courts "determined that remand was appropriate, the ALJ did not acknowledge the borderline age issue." *Id.* (citing *Trevino*, 2018 WL 1629211, at *12; *Nance*, 2017 WL 590300, at *4–5); *see also Dorothy D. v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-3384-B-BK, 2019 WL 7373476, at *2–3 (N.D. Tex. Nov. 15, 2019), *report and recommendation adopted*, No. 3:18-CV-3384-B-BK, 2019 WL 7371908 (N.D. Tex. Dec. 30, 2019) (citing *Jackson v. Colvin*, 240 F. Supp. 3d 593, 601 (E.D. Tex. 2017) (emphasis in original) (collecting cases)).

*report and recommendation adopted*, No. 4:20-CV-860, 2022 WL 4593081 (E.D. Tex. Sept. 29, 2022) (the ALJ "considered and evaluated the overall impact of all the factors present in Plaintiff's case and determined that it was appropriate to follow Plaintiff's chronological age. The regulations require nothing more.") (citing *McGowan*, 2019 WL 6794208, at *4). The ALJ determined that the limited adverse impact of all factors on Plaintiff's ability to work did not justify bumping him into the advanced age category. R. 21.

### C.    *Plaintiff Forfeited His Argument that the ALJ Failed to Resolve Conflicts in the VE's Testimony.*

Finally, Plaintiff argues that the ALJ erred in relying on the VE's testimony which was inconsistent with the DOT. ECF No. 13 at 12. Plaintiff contends that the VE testified that a SVP-5 position, such as Plaintiff's sales representative job, takes six months to learn, but the DOT indicates that it requires *over* six months. *Id.* at 14. Plaintiff also argues that the VE's reliance on the DOT listing for Inventory Control Clerk as a comparable position for Plaintiff's prior work was misplaced because the "job title is the only similarity." *Id.* at 15–16. The Commissioner responds that "[i]f Plaintiff disagreed with the VE's classification of his prior work, he was obligated to press the issue on cross-examination because as the claimant, he retains the burden to establish that he is unable to perform his past relevant work." ECF No. 15 at 10, 13 (cleaned up).

At the hearing, the ALJ asked the VE if there was any inconsistency between

his testimony and the DOT—the VE testified there was no conflict. R. 66. At the conclusion of the VE's testimony, the ALJ asked Plaintiff's counsel if she had any questions for the VE, and Plaintiff's counsel stated that she did not. R. 66.

Indeed, "[i]f Plaintiff disagreed with the VE's classification of his prior work" or the VE's SVP evaluation, then "he was obligated to press the issue on cross-examination because as the claimant, he retains the burden to establish that he is unable to perform his past relevant work." *Murray v. Kijakazi*, No. 4:20-CV-1707, 2022 WL 824844, at *5 (S.D. Tex. Mar. 18, 2022) (cleaned up) (quoting *Holland v. Colvin*, No. 3:14-CV-2964-K-BH, 2015 WL 5437727, at *13 n.4 (N.D. Tex. Aug. 31, 2015), *report and recommendation adopted*, No. 3:14-CV-2964-K, 2015 WL 5439051 (N.D. Tex. Sept. 15, 2015), *aff'd*, 652 F. App'x 266 (5th Cir. 2016)); *see also Martinez v. Berryhill*, No. SA-17-CV-0027-ESC, 2017 WL 8180457, at *7 (W.D. Tex. Nov. 14, 2017). Here, Plaintiff's attorney did not question the VE about anything, much less these two purported conflicts with the DOT, and therefore he waived this argument. *See Murray*, 2022 WL 824844, at *5 (citing *Brown v. Astrue*, No. 3:08-CV-0255-D, 2009 WL 64117, at *6 (N.D. Tex. Jan. 12, 2009) (noting the plaintiff waived his appellate argument where he failed to "cross-examine the VE regarding the putative conflict with the DOT, even though the VE testified that his conclusions were in accord with the DOT."); *Wise v. Barnhart*, 101 F. App'x 950, 951 (5th Cir. 2004) (per curium) ("even assuming, arguendo, that the [ALJ's]

hypothetical was deficient in the respects urged on appeal, because [the claimant's] representative was afforded an opportunity to correct any perceived deficiencies, there is no reversible error"). As the Fifth Circuit has explained, a plaintiff "should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of [a VE] and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey v. Apfel*, 230 F.3d 131, 147 (5th Cir. 2000).

Accordingly, Plaintiff has waived this argument. *See Murray*, 2022 WL 824844, at *5.

## V. CONCLUSION

Therefore, it is **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 13, is **DENIED**. It is further **ORDERED** that Commissioner's motion for summary judgment, ECF No. 14, is **GRANTED**. The decision of the Commissioner is **AFFIRMED**. This case is **DISMISSED WITH PREJUDICE**.

Signed at Houston, Texas, on September 20, 2023.

**Dena Hanovice Palermo**
**United States Magistrate Judge**